IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, | ) ) ) | |
| Plaintiff, | ) ) | No. 25-cv-02481 |
| v. | ) ) | Judge Andrea R. Wood |
| HIGHMARK BLUE CROSS BLUE SHIELD, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Northwestern Memorial Healthcare ("NMHC") provided emergency medical services to three patients ("Patients"), each of whom was a beneficiary of one of Defendant Highmark Blue Cross Blue Shield's ("Highmark") health insurance plans. Under a contract with non-party Blue Cross and Blue Shield of Illinois ("BCBS Illinois"), NMHC was obligated to provide medical treatment to any individual insured by a member company of the national Blue Cross Blue Shield Association ("Association"), including Highmark. NMHC filed the present action after Highmark refused to pay the full amount of claims for medical services NMHC provided to the Patients. NMHC's First Amended Complaint ("FAC") asserts a claim for breach of implied contract or, in the alternative, a claim for quantum meruit. (Dkt. No. 13.) Now, Highmark moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 14.) For the reasons that follow, Hallmark's motion is granted in part and denied in part.

### BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the FAC as true and views those facts in the light most favorable to NMHC as the non-moving party.

*Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

NMHC is an Illinois non-profit hospital that, together with its subsidiaries, provides medical care at multiple facilities in the Chicago metropolitan area. (FAC ¶¶ 1, 3.) Pursuant to a written contract with non-party BCBS Illinois, NMHC was required to medically treat any individual insured under a health plan financed, sponsored, or administered by a member company of the Association. (*Id.* ¶ 32.) That contract further set forth discounted rates that Association members would pay for medical services NMHC was required to accept as payment in full. (*Id.* ¶ 33.) Because Highmark is a member of the Association, NMHC is bound to treat patients insured by a Highmark health insurance plan pursuant to the terms of its contract with BCBS Illinois even though Highmark is not, itself, a party to that agreement. (*Id.* ¶¶ 33–35.)

Between July 2021 and December 2022, NMHC provided emergency medical services to the Patients, each of whom was insured under a Highmark health insurance plan. (FAC ¶¶ 11, 16, 18; FAC, Ex. A, Dkt. No. 13-1.) Upon admission to NMHC, each Patient presented their Highmark-issued "Blue Card," which indicated to NMHC that they were insured by an Association member, thereby obligating it to provide medical treatment at the discounted rates found in the BCBS Illinois contract. (FAC ¶¶ 35–38.) Before treating the Patients, NMHC contacted Highmark to verify the Patients' eligibility and obtain authorization for the medical care to be rendered. (*Id.* ¶¶ 17, 42.) Highmark confirmed that each Patient was insured under a Highmark plan, either authorized NMHC to provide care or indicated that authorization was not required, and approved the medically necessary services provided to the Patients. (*Id.* ¶¶ 17, 42, 44(g), (i).) Altogether, NMHC provided $411,677.70 worth of medical services to the Patients but, given the applicable discounted rates under the BCBS Illinois contract, submitted claims to

2

Highmark totaling $220,445.11. (*Id.* ¶ 39.) Yet Highmark paid just $62,875.56 of the charged amounts. (*Id.* ¶¶ 22, 39.)

Because Highmark has refused to pay the aggregate $157,569.55 unpaid balance on the Patients' claims (*id.* ¶¶ 22–23, 27, 39), NMHC initiated the present action in Illinois state court. Highmark subsequently removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332(a).[1] In its FAC, NMHC alleges that although Highmark was not itself a signatory to NMHC's contract with BCBS Illinois, there was nonetheless an implied contract under which NMHC would render medically necessary care to Highmark's insureds at the rates set by that contract. According to NMHC, Highmark breached that implied contract by failing to pay NMHC the full amount of the Patients' claims. To the extent that there was no implied contract between NMHC and Highmark, NMHC asserts an alternative claim for quantum meruit.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Here, Highmark contends that state-law claims

---

[1] This Court confirms its diversity jurisdiction, as NMHC is an Illinois citizen and Highmark is both incorporated and has its principal place of business in Pennsylvania. (FAC ¶¶ 3–4.) And because the unpaid balance that Highmark allegedly owes to NMHC exceeds $75,000, the amount-in-controversy requirement is met. (*Id.* ¶¶ 52, 75.)

related to one of the three Patients are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). And in addition to the preemption issue, Highmark contends that the FAC must be dismissed in its entirety because neither the claim for breach of implied contract nor the alternative claim for quantum meruit is adequately pleaded.

## I. ERISA Preemption

Highmark argues that, because one Patient was insured under an employer-sponsored plan governed by ERISA, the state-law claims seeking to recover amounts related to that Patient's care are preempted. ERISA contains a conflict preemption provision that preempts "any and all State laws" that "relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a). For purposes of ERISA's conflict preemption provision, "a law 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'" *Halperin v. Richards*, 7 F.4th 534, 541 (7th Cir. 2021) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). Accordingly, "ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018) (internal quotation marks omitted). At the same time, § 1144(a) is not so broad as to "preempt a state law claim merely because it requires a cursory examination of ERISA plan provisions." *Id.* (internal quotation marks omitted).

Preemption under ERISA § 1144(a) is an affirmative defense. *E.g.*, *Branson v. Caterpillar, Inc.*, No. 23 CV 14329, 2024 WL 3823157, at *5 (N.D. Ill. Aug. 14, 2024). Because "pleadings need not anticipate or attempt to circumvent affirmative defenses," *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010); dismissal under Rule 12(b)(6) is proper only "where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Novotney v. Walgreen Co.*, 683 F. Supp. 3d 785, 788 (N.D. Ill. 2023) (quoting *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015)). Yet

nowhere in its complaint does NMHC allege that any of the Patients' claims were governed by an ERISA plan. Instead, Highmark includes with its motion to dismiss a declaration attesting that one Patient was covered by an employer-sponsored health insurance plan and attaches the plan's Benefit Booklet as evidence. (Def.'s Mot. to Dismiss, Ex. 1, Halligan Decl. ¶¶ 13–14, Dkt. No. 15-1; Ex. A to Halligan Decl., Benefit Booklet, Dkt. No. 15-1.) It then asserts that the plan document is incorporated by reference into the FAC, such that it is properly considered without converting the motion to dismiss into one for summary judgment.

The incorporation-by reference doctrine allows a court to "consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Highmark asserts that the FAC effectively incorporates the Benefit Booklet for the ERISA-governed health plan by alleging that "Highmark received premium payments for Patients' enrollment and coverage in Highmark's respective health plans" and, in return, "Highmark promised its beneficiaries (including Patients) that it would pay medical providers who provided emergency and necessary treatment to those beneficiaries in exchange for Patients' premiums, and collected such premiums." (FAC ¶¶ 24, 26.) Assuming that those allegations suffice to incorporate the Benefit Booklet into the FAC, the Court does not believe that the fact that one Patient's health plan was governed by ERISA definitively establishes that that Patient's state-law claims are preempted by § 1144(a).

While Highmark argues that NMHC's right to recover the full charges related to that Patient's medical treatment requires interpreting and applying terms of their ERISA plan—namely, its definition of medical necessity—there are allegations in the FAC that at least raise the possibility that the Patient's state-law claims can be resolved without consulting their health

5

plan. In particular, the FAC alleges that, before treating the Patients, "NMHC sought and received authorization for treatment from Highmark. Highmark gave authorization reference numbers, or represented that authorization was not required, and approved the medically necessary services rendered to Patients, and approved Patients' admission and or continued hospitalization." (FAC ¶ 17; *see also id.* ¶¶ 42, 44(g), (i).) At the motion to dismiss stage, the Court accepts as true the allegations that Highmark pre-authorized the treatment NMHC provided to the Patients. In so doing, it can be reasonably inferred that Highmark "confirm[ed] that all of the expected treatment was medically necessary and covered by" the Patients' health plans, and therefore "there is no remaining question about whether the provided treatment was within the scope of the [Patients'] insurance plans." *Nw. Mem'l Healthcare v. Anthem Blue Cross of Cal.*, No. 1:24-CV-02941, 2025 WL 2306814, at *2 (N.D. Ill. Aug. 11, 2025). And that means that resolving NMHC's state-law claims as to the Patient covered by an ERISA plan "would not require interpretation or application of the terms of" that plan. *Id.*; *see also Nw. Mem'l Healthcare v. Blue Cross Blue Shield Healthcare Plan of Ga., Inc.*, No. 24-cv-2768, 2025 WL 2785425, at *9 (N.D. Ill. Sept. 30, 2025) ("Northwestern alleged in its complaint that Blue Cross Georgia pre-authorized the treatment of the patients. If that's right, then this Court would not need to get into the issue of coverage, and would not need to interpret the plan.").[2]

---

[2] The Court acknowledges that another court in this District dismissed in circumstances similar to those here state-law claims related to the medical treatment of patients covered by an ERISA plan as preempted by ERISA. *See Nw. Mem'l Healthcare v. Anthem Blue Cross & Blue Shield LLC*, No. 24 C 2777, 2025 WL 1455823, at *4–7 (N.D. Ill. May 21, 2025). But that court "did ***not*** address whether [the defendant's] ***pre-authorization*** of the patients' care would eliminate the need to dig into the ERISA plans given the state law claims advanced" by NMHC, and therefore its "decision does not undermine or conflict with this Court's rationale that pre-authorization resolves the medical necessity question and removes the need to examine the ERISA plan terms." *Anthem of Cal.*, 2025 WL 2306814, at *3.

6

Consequently, the Court cannot conclude that ERISA preempts the state-law claims arising from the care provided to the Patient with an ERISA plan.

## II. Breach of Implied Contract

Turning to the merits, the Court first addresses whether NMHC has stated a claim for breach of implied contract. A claim for breach of implied contract has the same elements as a claim for breach of express contract. *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 590 (N.D. Ill. 2022). Thus, a plaintiff "must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). But "[u]nlike an express contract, in which the parties arrive at an agreement using words, an agreement in an implied-in-fact contract is created through the actions and conduct of the parties." *Olson v. Ferrara Candy Co.*, --- N.E.3d ---, 2025 WL 1750241, at *11 (Ill. App. Ct. 2025). Accordingly, "[a]n implied contract arises from a promissory expression which may be inferred from the facts and circumstances and the expressions on the part of the promisor which show an intention to be bound." *In re Arthur J. Gallagher*, 631 F. Supp. 3d at 591 (internal quotation marks omitted).

Here, NMHC claims that Highmark's course of conduct in pre-authorizing the Patients' treatment and prior history of paying NMHC for medical services at the BCBS Illinois contract's discounted rate gave rise to an implied contract that Highmark breached by failing to make full payment on the Patients' claims. However, the Court finds that the FAC does not adequately plead the existence of a valid and enforceable contract between NMHC and Highmark. "There must be a consideration for every valid contract and, if there is no consideration, the contract is invalid." *Wilmington Sav. Fund Soc'y, FSB as Tr. of Brougham Fund I Tr. v. Herzog*, 253

7

N.E.3d 906, 917 (Ill. App. Ct. 2024) (internal quotation marks omitted). "Consideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance." *Country Mut. Ins. Co. v. Olsak*, 216 N.E.3d 291, 307 (Ill. App. Ct. 2022). NMHC alleges as its consideration the detriment it incurred in not receiving full payment for the medical services it provided to the Patients.

This Court agrees with the other courts in this District addressing substantially similar allegations in finding that NMHC's provision of medical care to the Patients does not adequately plead consideration for the alleged implied contract. *See Lucile Salter Packard Child.'s Hosp. v. Health Care Serv. Corp.*, No. 25-cv-04533, 2026 WL 278804, at *3–4 (N.D. Ill. Feb. 3, 2026); *Blue Cross of Ga.*, 2025 WL 2785425, at *4–6; *Anthem of Cal.*, 2025 WL 2306814, at *3. Pursuant to the BCBS Illinois contract, NMHC already had an obligation to render medically necessary services to patients who were insured by an Association member like Highmark. And "consideration cannot flow from an act performed pursuant to a preexisting legal duty." *Olsak*, 216 N.E.3d at 307 (internal quotation marks omitted); *see also Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 83 N.E.3d 1027, 1043 (Ill. App. Ct. 2017) ("The preexisting duty rule provides that where a party does what it is already legally obligated to do, there is no consideration as there is no detriment." (internal quotation marks omitted)). Because NMHC had a pre-existing legal duty to treat individuals receiving coverage from Association member companies, its treatment of Highmark's three patients in this case cannot give rise to a separate, implied-in-fact contract with Highmark. *Lucile Salter*, 2026 WL 278804, at *3. Nor can NMHC plead a new detriment based on its allegations of it not receiving full payment for the medical services it provided to the Patients. "That argument mixes contract formation with contract performance," *Blue Cross of Ga.*, 2025 WL 2785425, at *6, by improperly conflating "the

8

'detriment' inherent in consideration with the 'detriment' suffered when an agreement is breached," *Lucile Salter*, 2026 WL 278804, at *3. Highmark's "failure to properly pay is, if anything, a breach." *Id.*

In short, because the BCBS Illinois contract obligated NMHC to treat patients insured by Highmark, NMHC's treatment of the Patients cannot serve as consideration for a separate agreement between NMHC and Highmark. For that reason, NMHC fails to plead the existence of an implied contract between it and Highmark. Its breach of implied contract claim is therefore dismissed.

### III. Quantum Meruit

In the alternative to its implied-contract claim, NMHC seeks to recover the unpaid balance of the Patients' claims under a quantum meruit theory. "The term quantum meruit means literally 'as much as he deserves' and is an expression that describes the extent of liability on a contract implied in law (also called a 'quasi-contract'); it is predicated on the reasonable value of the services performed." *Archon Constr. Co. v. U.S. Shelter, LLC*, 78 N.E.3d 1067, 1074 (Ill. App. Ct. 2017) (internal quotation marks omitted). A quantum meruit claim requires a plaintiff to establish that "(1) it performed a service to benefit the defendant, (2) it did not perform the service gratuitously, (3) defendant accepted the service, and (4) no contract existed to prescribe payment for the services." *Id.*

Highmark first asserts that NMHC's quantum meruit claim fails because the BCBS Illinois contract governs NMHC's right to payment for the care provided to the Patients. "It is long settled in Illinois that an action in quasi-contract, such as quantum meruit, is precluded by the existence of an express contract between the parties regarding the work that was performed." *Id.* Further, courts have understood this rule generally to preclude the imposition of quasi-contractual liability against a third party that has benefitted from the work performed under a

9

plaintiff's contract with another party. *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 19 N.E.3d 638, 645 (Ill. App. Ct. 2014) ("[W]hen work is done under a contract, a suit generally must be between the parties to the contract. Simply because a third party has benefitted from the work does not make that party liable." (citation omitted)). "In other words, a party performing pursuant to a contract who is disappointed by its co-party's failure to pay generally cannot turn to a third party for compensation." *Id.* However, the Seventh Circuit has distinguished between a "scenario in which one attempts to impose on a third party liability for work done under an explicit contract between two different parties, **merely** because the third party benefitted from the work" and "a scenario where the imposition of quasi-contractual liability is sought because [the third party] not only benefitted from [a contracting party's] work, but enticed [the contracting party] to undertake the work in the first place and then refused to see [that party] paid." *Midcoast Aviation, Inc. v. Gen. Elec. Cred. Corp.*, 907 F.2d 732, 739 (7th Cir. 1990) (internal quotation marks omitted). It held that the latter scenario "is without the ambit of the general rule." *Id.*

The allegations here likewise fall outside the general rule precluding a quantum meruit claim against a third-party beneficiary to an express contract. Not only did NMHC perform non-gratuitous medical services for Highmark's insureds on the understanding that it would be compensated consistent with the terms of the BCBS Illinois contract, but Highmark also led NMHC to reasonably believe that it would be fully paid for its services by, among other things, pre-authorizing and approving those services as medically necessary. Such allegations suffice to plead a quantum meruit claim against Highmark notwithstanding the existence of the BCBS Illinois contract.

While one other court in this District has likewise concluded that a quantum meruit claim can be maintained against a third-party beneficiary to the BCBS Illinois contract in light of

10

*Midcoast Aviation*, *Lucile Salter*, 2026 WL 278804, at *4, another court in this District ruled the opposite, *Blue Cross of Ga.*, 2025 WL 2785425, at *8. This Court respectfully finds the district court's analysis in *Lucile Salter* more consistent with what remains binding Seventh Circuit precedent. Notably, the district court in *Blue Cross of Georgia* acknowledged the *Midcoast Aviation* decision but observed that it "has received a cold reception from Illinois courts, who have questioned whether it accurately reflects Illinois law." *Blue Cross of Ga.*, 2025 WL 2785425, at *8. And although it is true that the Illinois Appellate Court has questioned "whether *Midcoast Aviation* presents an accurate summation of Illinois law," *C. Szabo*, 19 N.E.3d at 646, the Illinois Supreme Court has not spoken on the matter. That being the case, the Seventh Circuit's interpretation of Illinois law in *Midcoast Aviation* continues to control this Court's analysis. *Reiser v. Res. Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("A decision by a state's supreme court terminates the authoritative force of our decisions interpreting state law . . . . But decisions of intermediate state courts lack similar force . . . ."); *see also Lucile Salter*, 2026 WL 278804, at *4 n.2 ("Although Illinois courts have not wholeheartedly embraced *Midcoast Aviation*, the Illinois Supreme Court has not disavowed it. It therefore remains binding on this Court." (citation omitted)).

    This Court is also not persuaded by the finding in *Blue Cross of Georgia* that *Midcoast Aviation* was inapposite because "the complaint at hand doesn't allege that [the non-party insurer] enticed the performance. At most, it signed off on the treatment as medically necessary." *Blue Cross of Ga.*, 2025 WL 2785425, at *8. That analysis puts too much emphasis on the use of the word "enticed" in *Midcoast Aviation*, which has not been understood to require enticement but instead "focus[es] on the reasonable expectation of payment as constituting the exception." *Lane, Noland, Smith & Co. v. First Nat'l Realty & Dev., Inc.*, No. 91 C 0185, 1991 WL 204948,

11

at *5 (N.D. Ill. Oct. 2, 1991); *see also Sunny Handicraft Ltd. v. Envision This!, LLC*, No. 14-cv-1512, 2015 WL 231108, at *4 (N.D. Ill. Jan. 16, 2015) ("In some instances . . . quasi-contractual liability may be imposed upon a benefitting third party where the plaintiff alleges facts that indicate that the plaintiff had a reasonable expectation of payment from the third party.").

Highmark also argues that the quantum meruit claim must be dismissed because NMHC provided its medical services for the benefit of the Patients, not Highmark. That ignores the FAC's allegation that Highmark benefitted from NMHC treating the Patients in the following ways: improved health outcomes for the Patients resulting in lower costs for Highmark; increased customer satisfaction; and increased market share by offering Highmark's customers access to high-quality hospitals like NMHC. (FAC ¶ 29.) Accepting those allegations as true, the Court finds that the FAC has plausibly pleaded that Highmark received a benefit from the services NMHC provided to the Patients. *Lucile Salter*, 2026 WL 278804, at *5 (finding that the plaintiff had pleaded a benefit to the non-party insurer based on cost savings on future medical claims, increased market share, and increased customer satisfaction); *Anthem of Cal.*, 2025 WL 2306814, at *4 (same).

Despite the fact that there existed an express contract on the subject matter, NMHC has stated a quantum meruit claim by alleging that Highmark acted in a way that gave NMHC a reasonable expectation that Highmark would pay the Patients' claims consistent with the rates set in the BCBS Illinois contract. And NMHC has sufficiently alleged that Highmark received a benefit from the services NMHC rendered to the Patients. The Court therefore denies Highmark's motion to dismiss the quantum meruit claim.

## CONCLUSION

For the foregoing reasons, Highmark's motion to dismiss the FAC (Dkt. No. 14) is granted in part and denied in part. The motion is granted with respect to the claim for breach of implied contact in Count I but denied as to the claim based on quantum meruit in Count II.

ENTERED:

Dated:  February 27, 2026

_____
Andrea R. Wood
United States District Judge